BENNETT v. STOCKWELL.

1. LIBEL AND SLANDER—PRIVILEGE—GRAND JURY REPORT.
A report made by a grand jury to the circuit court, re-
flecting upon the official conduct of the prosecuting at-
torney, is not even qualifiedly privileged.

2. SAME—GRAND JURY REPORT—ADMISSIBILITY OF EVIDENCE—
BONA FIDES—MITIGATION OF DAMAGES.
Evidence of defendants' good faith in making such report
was not admissible in bar of the action for libel, but was
admissible in mitigation of damages.

3. SAME—PUBLICATION—GRAND JURORS—LIABILITY.
All of the members of the grand jury were *prima facie*
liable for the publication of the libel on the prosecuting
attorney where their report to the court, containing al-
leged libelous matter concerning plaintiff, began "we, the
members of the grand jury now in session, beg leave to
report," and was signed "The grand jury," etc., by the
foreman, and was presented by him to the court in the
presence of the other members of the jury.

4. WITNESSES—STATUTES—APPLICABILITY—GRAND JURORS.
Section 11887, 3 Comp. Laws (3 Comp. Laws 1915, § 15714),
providing that "in no case can a member of a grand jury
be obliged or allowed to testify or declare in what man-
ner he or any other member of the jury voted on any
question before them or what opinions were expressed by
any juror in relation to any such question," does not
apply where such members are testifying as to such mat-
ters in an action against them for libel in making and
filing an unprivileged report.[1]

Error to Kalamazoo; North, J., presiding. Submit-
ted April 12, 1917. (Docket No. 137.) Decided June
27, 1917.

Case by Milo O. Bennett against Joseph W. Stock-
well and others for libel. Judgment for defendants

[1] On privilege as to proceedings of grand jury, generally, see
note 32 L. R. A. (N. S.) 785.

on a directed verdict. Plaintiff brings error. Re-
versed.

*Milo O. Bennett, in pro. per.*

*Alfred J. Mills,* for appellees.

STONE, J.   This is an action of libel against the de-
fendants, who served as grand jurors in the circuit
court for the county of Kalamazoo, for the composi-
tion and publication of an alleged false, malicious, and
defamatory document, styled a "report," which was
filed with the circuit court for said county by the de-
fendants, through Byron J. Carnes, their foreman, on
February 5, 1914. The report was written by defend-
ant Stockwell and handed to the circuit judge by de-
fendant Carnes. The said "report," containing the al-
leged libelous language, was before this court in *Ben-
nett* v. *Kalamazoo Circuit Judge,* 183 Mich. 200 (150
N. W. 141, Am. & Eng. Ann. Cas. 1916E, 223), and
is fully set forth there, in the opinion of Justice
BROOKE, to which reference is made. It was addressed
to the circuit court for the county of Kalamazoo, and
the opening sentence is: "We, the members of the
grand jury now in session, beg leave to report," etc.
It was signed: "The Grand Jury of Kalamazoo Coun-
ty, by Byron J. Carnes, Foreman of Grand Jury." It
appears undisputed that this report was presented to
the court by the foreman thereof, in the presence of
the entire jury.

In *Bennett* v. *Kalamazoo Circuit Judge, supra,* we
said:

"In this State there are but two matters upon which
a grand jury have statutory right to make reports or
presentments—*i.e.*, trespass on public lands (1 Comp.
Laws, § 1395, 1 Comp. Laws 1915, § 578), and viola-
tion of the election laws (§ 11443, 3 Comp. Laws, 5
How. Stat. [2d Ed.] § 14910, 3 Comp. Laws 1915, §

15165). Sections 11891-11893, 3 Comp. Laws (5 How. Stat. [2d Ed.] §§ 15062-15064, 3 Comp. Laws 1915, §§ 15718-15720), provide how indictments shall be found, but contain no provisions for the filing of a report or presentment reflecting upon the conduct of public officials.

"An examination of the report filed by the grand jury in the instant case shows that it contains reflections of the gravest character upon the official conduct of the petitioner, if it does not actually charge him with the commission of a felony.

"A review of all the cases cited upon both sides of the question, and such others as we have been able to examine, leads us to the conclusion that inherently, apart from statutory sanction, the grand jury has no right to file such a report, unless it is followed by an indictment. The evils of the contrary practice must be apparent to all. While the proceedings of the grand jury are supposed to be secret, it is clear that in the present instance that secrecy was not inviolate, for the objectionable report found its way into the press of Kalamazoo within a few hours after it had been filed. Whether the matter contained in such report be true or false, it can make no difference with the principle involved. In either event the accused person is obliged to submit to the odium of a charge or charges based, perhaps, upon insufficient evidence, or no evidence at all, without having the opportunity to meet his accusers and reply to their attacks. This situation is one which offends every one's sense of fair play and is surely not conducive to the decent administration of justice."

And this court issued a mandamus to compel the respondent therein to grant a motion of the relator to strike from the files of the court, said report. Upon the trial of the instant case it appeared that the plaintiff had been elected prosecuting attorney of Kalamazoo county at the general election held in the month of November, 1912, and that he served as such officer during the years 1913 and 1914.

There was evidence in the case that defendant Stockwell prepared the report. He testified:

"I prepared that report myself and not from any dictation. * * * I made two copies, one original and one carbon. The original was signed by the foreman."

It appears that the carbon copy reached the newspaper publisher through the hands of the circuit judge. The witness Stockwell says he does not remember what was done with the carbon copy, but testified that he did not give it to the circuit judge. It does appear undisputed that the circuit judge had possession of the carbon copy shortly afterward and exhibited it to Mr. Nichols, the special prosecuting attorney who had been appointed to attend the grand jury. It further appeared that Mr. Nichols, although attending the grand jury in the examination of witnesses and the preparation of indictments, had no knowledge that such report had been made, or was in existence, until the carbon copy was shown to him by the circuit judge on the same day the original was filed and spread upon the journal of the court.

At the close of the plaintiff's evidence a motion was made to direct a verdict for the defendants upon the grounds that the alleged libelous article declared on and made a basis of the action was privileged absolutely, or, if not privileged absolutely, that it was qualifiedly privileged; and after some discussion the court directed a verdict for the defendants.

The case is brought here by the plaintiff upon writ of error, and the assignments of error discussed are that the court erred:

(1) In charging the jury to return a verdict in favor of the defendants upon plaintiff's own case, as shown by the record.

(2) In striking out the testimony of one of the defendants as to the action of certain jurors in their deliberations.

(3) In granting the motion of defendants' counsel

to withdraw plaintiff's case from the jury, and direct a verdict against plaintiff without submitting the same to the jury for their determination as a question of fact whether the article was libelous, and as to the extent of plaintiff's damages.

We are of opinion that this court has already passed on the question whether this alleged report was privileged, either absolutely or qualifiedly. If it had been privileged at all, this court would not have ordered it stricken from the record. It is manifest that if the defendants composing the grand jury had returned an indictment against the plaintiff, that would have been privileged.

It is the principal contention of defendants' counsel that the article was qualifiedly privileged. We are of the opinion that it was not privileged at all. · This court has repeatedly held that the occasion determines the question of privilege, and we have said: That qualified privilege extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest, or duty. *Bacon* v. *Railroad Co.,* 66 Mich. 166-170 (33 N. W. 181); *Garn* v. *Lockard,* 108 Mich. 196 (65 N. W. 764); *Schultz* v. *Guldenstein,* 144 Mich. 636-641 (108 N. W. 96); *Madill* v. *Currie,* 168 Mich. 546-558 (134 N. W. 1004).

In *Rector* v. *Smith,* 11 Iowa, 302, the supreme court of that State held that a grand jury had no power to present to the court otherwise than by indictment the misconduct of an officer; and that a report to the district court charging an officer with malfeasance was not a privileged communication; and that the defendant could not plead this privilege in bar of plaintiff's right to recover. We think that court was illogical when it further held that if such publication was made without malice, and as the defendant supposed in the

discharge of a public duty, and without any ill will or hatred toward the plaintiff, there could be no recovery. The court there referred to the language of Chief Justice Shaw in the case of *Bradley* v. *Heath,* 12 Pick. (Mass.) 163 (22 Am. Dec. 418). A reference to that case shows that Chief Justice Shaw was there speaking of a case which presented a qualified privilege. In our opinion it is illogical to say that, in the absence of privilege, good faith can be shown in bar of plaintiff's right to recover. Undoubtedly all the surrounding circumstances may be shown in mitigation of damages, but not in bar of the action, where the matter published is not privileged. Cases are numerous in this State where evidence in mitigation of damages has been received under such circumstances, but not in bar of the action.

It seems to have been the opinion of the trial court in the instant case that there was no evidence as to which or how many of the defendants concurred in the action of the grand jury. It should be borne in mind that this is an action for publishing alleged libelous matter. As we have said, the undisputed evidence shows that this so-called report was presented in open court by the foreman of the grand jury, purporting to act in behalf of all the defendants, and that all of the defendants were present, apparently acquiescing in what was done. We have called attention to the manner in which the report was signed. We think that, *prima facie,* at least, it may be said that all of the defendants acquiesced in the publication of the report. Certainly the foreman and the defendant who prepared it for publication would be responsible for it, and we think, as we have said, that *prima facie* all of the defendants acted in or acquiesced in its publication.

It is the further claim of the appellant that the members of the grand jury should have been allowed to

testify to the proceedings in the grand jury room as respects the voting for, and composition and publication of, the alleged libel. Our statute (3 Comp. Laws, § 11887, 3 Comp Laws 1915, § 15714) provides as follows:

"Members of the grand jury may be required by any court to testify, whether the testimony of a witness examined before such jury is consistent with, or different from, the evidence given by such witness before such court; and they may also be required to disclose the testimony given before them by any person, upon complaint against such person for perjury, or upon his trial for such offense; but in no case can a member of a grand jury be obliged or allowed to testify or declare in what manner he or any other member of the jury voted on any question before them, or what opinions were expressed by any juror in relation to any such question."

In the following cases we have referred to and passed upon this statute: *People* v. *Lauder*, 82 Mich. 122 (46 N. W. 956); *People* v. *O'Neill*, 107 Mich. 556 (65 N. W. 540); *People* v. *Thompson*, 122 Mich. 411-417 (81 N. W. 344); *In re Archer*, 134 Mich. 408-410 (96 N. W. 442). An examination of these cases will show that we were there dealing with indictments which had been properly found and presented by grand jurors.

The pertinent question is whether this statute should be held to apply in the instant case, where we have held that the proceedings of the grand jury in this matter were without authority or jurisdiction. It has long been the policy of the law, in furtherance of justice, that the legitimate investigations and deliberations of a grand jury should be conducted in secret, and that for most intents and purposes its proceedings are legally sealed against divulgence. The grand jurors are sworn to keep secret the State's, their fellows', and their own counsel. The policy is to inspire

the jurors with a confidence of security in the discharge of their legitimate and responsible duties, so that they may deliberate and decide without apprehension of any detriment from an accused, or any other person; to secure the utmost freedom of disclosure of alleged crimes and offenses by prosecutors; to conceal the fact that an indictment is found against a party, in order to avoid the danger that he may escape and elude arrest upon it, before the presentment is made. That grand jurors cannot testify how they or any of their fellows voted, or as to what induced them to find an indictment, or as to opinions expressed by their fellows or themselves, upon any question properly before them and considered by them, is well settled. *Hooker* v. *State,* 98 Md. 145 (56 Atl. 390), reported in 1 Am. & Eng. Ann. Cas. 644, and note citing many cases, including *People* v. *Lauder, supra,* and *People* v. *Thompson, supra.*

In accord with our statute, it is not competent for a grand jury to testify as to the character or sufficiency of the evidence upon which an indictment was found, or how he voted thereon; But should that rule obtain in matters before the grand jury where it had no jurisdiction to make the "report"? We think not. For instance, it was held at an early day that where process was issued on the complaint of a grand juror, which was without any authority whatever and was void, he was held liable to the person injured. *Allen* v. *Gray,* 11 Conn. 95. We are of opinion that the statute above quoted does not apply to such a proceeding as was had by the grand jury in the instant case, and that its provisions cannot be invoked by the defendants here.

We think that the court erred in excluding the testimony offered to show the action of certain grand jurors in their deliberations, with reference to this so-called report; and that the court also erred in di-

recting a verdict for the defendants, and in not submitting the case to the jury upon proper instructions.

The judgment is reversed, and a new trial granted, with costs to the appellant.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. FELLOWS, J., did not sit.