Baldasaro PALMENTERE, Plaintiff,

v.

William J. CAMPBELL, Leroy Cox, James E. Gardiner, John C. Hockery, Gordon Kellner, Russell G. Kincaid, Alfred Lighton, Ralph G. Martin, Robert M. Rogers, Raymond Schmidt, Clarence R. Sifers, William R. Stanley, W. I. Hockaday, Robert Dowd, Don Hutson, Frank Bennett and Thomas Madigan, Defendants.

No. 13466-3.

United States District Court
W. D. Missouri, W. D.

May 10, 1962.

William J. Gilwee, Kansas City, Mo., for plaintiff.

Watson, Ess, Marshall & Enggas, by Douglas Stripp, Kansas City, Mo., for defendants Campbell, Cox, Gardiner, Kellner, Schmidt and Sifers.

Robert M. Van Horn, Kansas City, Mo., for defendant Don Hutson.

Sprinkle, Carter, Sprinkle & Larson by Roy A. Larson, Jr., and Kuraner, Freeman, Kuraner, Oberlander & Lamkin, by George O'Laughlin, Kansas City, Mo., for defendant Stanley.

Sebree, Shook, Hardy & Ottman, by David R. Hardy, and Sheffrey, Ryder & Skeer, by David Skeer, Kansas City, Mo., for defendant Lighton.

Knipmeyer, McCann & Millett, by Lowell E. Knipmeyer, Kansas City, Mo., for defendant Martin.

Kuraner, Freeman, Kuraner, Oberlander & Lamkin, Kansas City, Mo., for de-

fendants Hockery, Rogers, Kincaid, Campbell, Stanley and Cox.

W. H. Bates, Kansas City, Mo., for defendants Hockaday, Dowd, Bennett and Madigan.

DUNCAN, Chief Judge.

Plaintiff instituted this suit against the defendants under § 1983 Title 42 U.S.C.A.[1] to recover damages claimed to have been sustained by him as a result of the defendants causing his illegal arrest while under subpoena awaiting to testify before the state grand jury in Kansas City, Jackson County, Missouri.

The defendants, William J. Campbell, Leroy Cox, James E. Gardiner, John C. Hockery, Gordon Kellner, Russell G. Kincaid, Alfred Lighton, Ralph G. Martin, Robert M. Rogers, Raymond Schmidt, Clarence R. Sifers, and William R. Stanley, were members of the duly qualified and acting grand jury for Jackson County, Missouri; the defendant Hockaday was the acting chief of police of Kansas City; the defendants Dowd, Bennett and Madigan were members of the police department of Kansas City, Missouri, duly assigned to the detective bureau or department; and the defendant Don Hutson was an assistant prosecuting attorney of Jackson County, Missouri.

Plaintiff alleged that on or about April 20, 1961, the defendants grand jurors and the defendant Don Hutson, assistant prosecuting attorney, caused the plaintiff to be served with a subpoena commanding him to appear as a witness before the grand jury on April 21, 1961, and that he responded to said subpoena on said date, but was excused by the grand jury with instructions to appear on April 24, 1961.

That on April 24, 1961, upon the arrival of the plaintiff at the time and place designated in the subpoena, the above named grand jurors and Don Hutson, assistant prosecuting attorney, caused the plaintiff to be directed to a witness room adjoining a room which was occupied by the defendants grand jurors and Hutson. That while he "was waiting to be called as a witness and not committing any felony, treason or breach of the peace", he was, at the direction of the above named grand jurors, Don Hutson and E. I. Hockaday, forcibly arrested by the defendants, Robert Dowd, Frank Bennett and Thomas Madigan, without any warrant of arrest, and removed to the jail in Kansas City, Missouri, located in the Police Headquarters Building.

Plaintiff asserts that after having been arrested without a warrant, he was detained in the City Jail at the direction of the defendants, and was there required to submit to "being photographed with a police bertillon number across his chest and his fingerprints taken to be distributed among law enforcement agencies for the purpose of bringing his criminal record up to date; * * *".

Plaintiff maintains that he was "detained and imprisoned by the defendants and all of them upon the purported justification that he had been arrested and was held for 'investigation', * * *". Further, that after he "had been detained, confined, imprisoned and deprived of his liberty for a long period of time he was released and discharged from custody of defendants by Writ of Habeas Corpus," granted by a Circuit Judge of Jackson County, Missouri; that he "was not then charged with a crime or violation of ordinance, nor has he subsequently been so charged."

He further alleges that the acts about which he complains in bringing about and causing his arrest by the defendants "constituted a violation of the Constitution and laws of the United States of

[1] "§ 1983. Civil action for deprivation of rights

"Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

America, in that the plaintiff, was deprived by the defendants, and each of them, of his right not to be deprived of his life, liberty and property, without due process of law, all in violation of Amendments V and XIV of the Constitution of the United States and 28 U.S.C.A., Section 1343 and 42 U.S.C.A. Section 1983."

He alleges that his arrest was clearly in violation of Section 491.220 RSMo 1949, V.A.M.S., which is as follows:

"Witnesses shall be privileged from arrest in all cases, except treason, felony and breach of the peace, during their attendance on any court, or where their attendance is required by subpoena, and in going to and returning thence, allowing one day for every twenty miles from their abode."

Plaintiff further cites Section 540.180 RSMo 1949, V.A.M.S.:

"If any witness, duly summoned to appear and testify before a grand jury, shall fail or refuse to obey, the court shall cause compulsory process to be issued to enforce his attendance, and may punish the delinquent in the same manner and upon like proceedings as provided by law for disobedience of a subpoena issued out of such court in other cases."

The defendants, members of the grand jury, have filed separate motions, which are practically identical in language and relief sought, in which they say that they are ready and willing to defend themselves on the merits of this cause of action both as to the facts and law, but that they cannot do so unless they may reveal to their counsel information to be embodied in pleadings, testify concerning, or otherwise used in such manner as may be necessary to a proper defense, and otherwise make full use of any and all proceedings and deliberations of the grand jury necessary to their defense. The prayer of the motion is:

"WHEREFORE, these defendants move the Court for an order, (1) declaring that their obligation of secrecy as grand jurors does not pro-

hibit them from revealing to counsel, embodying in pleadings, testifying concerning, or otherwise using in such manner as may be necessary to a proper defense herein, occurrences before and the actions of said Grand Jury, the counsel of the state, of their fellows and themselves, the manner of voting and the opinions of grand jurors on any questions before them, all as covered by said oath or secrecy and the aforesaid statutes, or in the alternative, (2) dismissing the plaintiff's complaint against these defendants for the reason that the aforesaid statutes and oath of secrecy prevent them from offering a proper defense and therefore the maintenance of this action would result in a deprivation of these defendants' property without due process of law in violation of the Constitution and laws of the United States."

The oath to be administered to state grand jurors, Section 540.080 RSMo 1949, V.A.M.S., provides:

"You do solemnly swear you will diligently inquire and true presentment make, according to your charge, of all offenses against the laws of the state committed or triable in this county of which you have or can obtain legal evidence; the counsel of your state, your fellows and your own, you shall truly keep secret. You further swear that you will present no one for any hatred, malice or ill-will; neither will you leave unpresented any one for love, fear, favor or affection, or for any reward or the hope or promise thereof, but that you will present things truly as they come to your knowledge, to the best of your understanding, according to the laws of this state, so help you God."

Section 540.120 RSMo 1949, V.A.M.S., provides:

"Any person having taken said oath as aforesaid, who shall willfully violate the same, shall be adjudged guilty of a misdemeanor, and, upon conviction, be punished by a

fine of not less than one hundred nor more than two hundred dollars, or by imprisonment in the county jail not exceeding three months, or by both such fine and imprisonment."

Section 540.300 provides:

"Members of the grand jury may be required by any court to testify whether the testimony of a witness examined before such jury is consistent with or different from the evidence given by such witness before such court; and they may also be required to disclose the testimony given before them by any person, upon a complaint against such person for perjury, or upon his trial for such offense."

Section 540.310 provides:

"No member of a grand jury shall be obliged or allowed to testify or declare in what manner he or any other member of the grand jury voted on any question before them, or what opinions were expressed by any juror in relation to any such question."

And, finally, with respect to the question of secrecy, Section 540.320 provides:

"No grand juror shall disclose any evidence given before the grand jury, nor the name of any witness who appeared before them, except when lawfully required to testify as a witness in relation thereto; nor shall he disclose the fact of any indictment having been found against any person for a felony, not in actual confinement, until the defendant shall have been arrested thereon. Any juror violating the provisions of this section shall be deemed guilty of a misdemeanor."

The only question for determination by this court at this time is whether the grand jury may be freed from their oath of secrecy under the statute so that they may defend themselves against the plaintiff's charge of violating his civil rights. The exact question is *res nova* before this court. The reasons for the policy of secrecy in connection with grand jury proceedings are discussed in Vol. VIII, Wigmore on Evidence, 3d Ed., § 2360, and may be summarized in the following language:

"\* \* \* to protect the jurors themselves; to promote a complete freedom of disclosure; to prevent the escape of a person indicted before he may be arrested; to prevent the subornation of perjury in an effort to disprove facts there testified to; and to protect the reputations of persons against whom no indictment may be found."

We are concerned here only with the first reason—"to protect the jurors themselves".

The Missouri decisions which dealt with the question of secrecy of the grand jury are not dispositive of the issues now before us since they dealt with the question of when a grand juror may be a witness. The cases are important however, to indicate the trend that is occurring concerning the secrecy of the grand jury.

The first reported case dealing with this subject was State v. Baker, 20 Mo. 338 (1855). Baker was indicted for murder and some time thereafter he filed a motion in which he alleged that he ought not to be required to answer to the indictment because it was not found by any 12 of the grand jurors, but by simply a majority of a number who constituted the grand jury. In support of his motion he obtained affidavits from six of the members of the grand jury to sustain his position, and the court permitted such grand jurors to testify to the effect that they did not vote at all with respect to the indictment. Upon such evidence, the court dismissed the indictment. The order was set aside on appeal. In discussing the issue, the court said:

"One clause of the grand juror's oath is as follows: 'The counsel of the state, your fellows and your own, you shall well and truly keep secret.' This part of the oath has no limitation as to time; it is not to keep secret during the term the grand

juror is acting as such, nor during the term of the court; but he is 'well and truly to keep secret.' The grand juror has an important trust to perform. He is required to make diligent inquiry into the various breaches of the laws of his state, within his county, whose punishment is preceded by indictment. It is often a disagreeable duty; often an irksome task; yet, under his oath, he is bound to perform it. He is a member of a secret inquest, with ample power to ferret out offences; he is charged to assist in doing this. Now, in order to protect him, as well as to secure the punishment of the guilty, strict and rigid secrecy is required and enjoined upon the members of this inquest.

"The grand juror is expressly exempted from all obligation to testify in what manner he or any other member of the grand jury voted on any question before them, or what opinions were expressed by any juror in relation to such question. Nay, the law did not stop at relieving such juror from this obligation, but it expressly prohibits the juror from declaring what opinions were expressed, or how he or any other juror voted on any question before that body. 'No member of a grand jury shall be obliged or *allowed* to testify or declare,' &c."

Further, in discussing the affidavits voluntarily given by the grand jurors, the court had this to say:

"These grand jurors should have met the reprimand of the court, for their willingness to declare how they voted, or that they did not vote at all, instead of being permitted to file their affidavits. Such a course is not again to be permitted."

Between the time of the decision in the Baker case in 1855, and the final word in State ex rel. Clagett v. James, Mo., 327 S.W.2d 278, in 1959, where the court permitted the defendant to inspect parts of the transcript containing the testimony of the defendant and the witnesses endorsed on the indictment against him, there has been a trend of relaxing the secrecy rule, but in none of these cases was the question of the secrecy of the grand jurors themselves with respect to their own acts or those of their fellows involved.

In Mannon v. Frick, 365 Mo. 1203, 295 S.W.2d 158, 163, in an opinion by Judge Eager, Presiding Judge, the Supreme Court used this language:

"Many of the states have statutes similar, in general, to those of Missouri. From our examination of the decisions in other states and of the works of text writers, it is our conclusion that the original rule of common law secrecy has been substantially modified, not only by the enactment of statutes, but by court decisions as well.

"Our statutes in themselves constitute a limitation of the common law rule, and an expansion of the right of disclosure. While there is still considerable diversity of opinion on the subject, the weight of authority seems to be that, since the original rule of secrecy was adopted to protect and promote the public welfare, the law may, through its constituted tribunals, dispense with the observance of secrecy, and in the furtherance of justice require a witness or witnesses to testify to certain of the proceedings before a grand jury; and that such disclosure may be required either in the general public interest or in the protection of private rights. Some disclosures are still generally forbidden as, for instance, the votes of the respective grand jurymen, and their deliberations or expressions of opinion."

As seen by the above cited cases, the courts are moving in the direction of relaxing the rigid rules of secrecy. The trend has included Federal courts as well as the State courts. In fact, by Act of Congress the rule of secrecy as applied

to witnesses before the Federal grand juries has been completely abolished. Rule 6(e), F.R.Crim.P., 18 U.S.C.A., imposes a conditional obligation on a "juror, attorney, interpreter or stenographer" but no secrecy is imposed upon witnesses. See: In re Hearings Before Committee on Banking and Currency of the U. S. Senate, D.C., 19 F.R.D. 410.

 The courts have also relaxed the rule as to the proceedings generally before such grand jury until little remains except as to proceedings in the executive or closed sessions. See: Schwabe, Inc. v. United Shoe Machinery Corp., 194 F. Supp. 763 (D.C.Mass.1958); United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

The rule of reason has been applied. After the indictment has been returned or the investigation ended, there is little or no reason for continuing the rigid rule of secrecy. Although the rigid rule as to proceedings before grand juries has been relaxed, it has not been extended to relaxation of the secrecy imposed upon the grand jurors, except as authorized by § 540.310, with respect to what took place in the executive session and what was said and done by the grand jurors themselves in regard to any indictment or other matter under investigation.

The only case that I have been able to find which deals with the question of liability of jurors for alleged unlawful acts or acts committed by them beyond their jurisdiction, is the Michigan case of Bennett v. Stockwell, 197 Mich. 50, 163 N.W. 482, L.R.A.1917F, 761. It should be noted that Michigan has a statute very similar to that of Missouri, providing when grand jurors may and may not testify in regard to matters before the grand jury. The statute, Comp.Laws 1897, § 11887, provides:

"Members of the grand jury may be required by any court to testify, whether the testimony of a witness examined before such jury is consistent with, or different from, the evidence given by such witness before

such court; and they may also be required to disclose the testimony given before them by any person, upon complaint against such person for perjury, or upon his trial for such offense; but in no case can a member of a grand jury be obliged or allowed to testify or declare in what manner he or any other member of the jury voted on any question before them, or what opinions were expressed by any juror in relation to any such question."

Bennett v. Stockwell, supra, was the upshot of Bennett v. Kalamazoo Circuit Judge, 183 Mich. 200, 150 N.W. 141, Ann. Cas.1916E, 223. The grand jury in Kalamazoo County had made a report which had been handed to the court containing derogatory statements concerning Bennett, the prosecuting attorney of Kalamazoo County. Thereafter, Bennett filed a motion to strike the report from the files, and upon the court's refusal to do so, he sought a writ of mandamus in the Supreme Court, and in granting the writ, the court said:

"In this state there are but two matters upon which a grand jury have statutory rights to make reports or presentments, i. e., trespass on public lands * * * and violation of the election laws * * *. §§ 11891, 11893, Comp. Laws, provide how indictments shall be found, but contain no provisions for the filing of a report or presentment reflecting upon the conduct of public officials.

"An examination of the report filed by the grand jury in the instant case shows that it contains reflections of the gravest character upon the official conduct of the petitioner, if it does not actually charge him with the commission of a felony.

"A review of all the cases cited upon both sides of the question, and such others as we have been able to examine, leads us to the conclusion that inherently, apart from statutory sanction, the grand jury has no right

to file such a report, unless it is followed by an indictment. The evils of the contrary practice must be apparent to all.

"While the proceedings of the grand jury are supposed to be secret, it is clear that in the present instance that secrecy was not inviolate, for the objectionable report found its way into the press of Kalamazoo within a few hours after it had been filed. Whether the matter contained in such report be true or false, it can make no difference with the principle involved.

"In either event the accused person is obliged to submit to the odium of a charge or charges based, perhaps, upon insufficient evidence, or no evidence at all, without having the opportunity to meet his accusers and reply to their attacks. This situation is one which offends every one's sense of fair play and is surely not conducive to the decent administration of justice."

Subsequently Bennett brought suit against the grand jurors for libel. Bennett v. Stockwell, 163 N.W. 482, supra. The court directed a verdict for the defendants on the grounds that the libelous article was privileged. Appeal was had on the grounds that the court erred in directing a verdict, and also on the ground that the court erred in not allowing members of the grand jury to testify. On the question of privilege, the Supreme Court of Michigan referred to its prior decision in Bennett v. Kalamazoo Circuit Judge, supra, and stated:

"We are of opinion that this court has already passed on the question whether this alleged report was privileged, either absolutely or qualifiedly. If it had been privileged at all, this court would not have ordered it stricken from the record. It is manifest that if the defendants composing the grand jury had returned an indictment against the plaintiff, that would have been privileged."

In disposing of the contention that the members of the grand jury should have been permitted to testify, the court said:

"The pertinent question is whether this statute should be held to apply in the instant case, where we have held that the proceedings of the grand jury in this matter were without authority or jurisdiction.

"It has long been the policy of the law, in furtherance of justice, that the legitimate investigations and deliberations of a grand jury should be conducted in secret, and that for most intents and purposes its proceedings are legally sealed against divulgence. The grand jurors are sworn to keep secret the state's, their fellows', and their own counsel.

"The policy is to inspire the jurors with a confidence of security in the discharge of their legitimate and responsible duties, so that they may deliberate and decide without apprehension of any detriment from an accused, or any other person; to secure the utmost freedom of disclosure of alleged crimes and offenses by prosecutors; to conceal the fact that an indictment is found against a party, in order to avoid the danger that he may escape and elude arrest upon it, before the presentment is made. That grand jurors cannot testify how they or any of their fellows voted, or as to what induced them to find an indictment, or as to opinions expressed by their fellows or themselves, upon any question properly before them and considered by them, is well settled." [Citing cases]

It will be noted in this quotation from the court's opinion, that the court was careful to preserve the right of secrecy in regard to matters within the jurisdiction of the grand jury. In that respect the court continues further:

"In accordance with our statute, it is not competent for a grand juror to testify as to the character or sufficiency of the evidence upon which

an indictment was found, or how he voted thereon; but should that rule obtain in matters before the grand jury where it had no jurisdiction to make the 'report'? We think not.

"For instance, it was held at an early day that where process was issued on the complaint of a grand juror, which was without any authority whatever and was void, he was held liable to the person injured. Allen v. Gray, 11 Conn. 95. We are of opinion that the statute above quoted does not apply to such a proceeding as was had by the grand jury in the instant case, and that its provisions cannot be invoked by the defendants here.

"We think that the court erred in excluding the testimony offered to show the action of certain grand jurors in their deliberations, with reference to this so-called report; and that the court also erred in directing a verdict for the defendants, and in not submitting the case to the jury upon proper instructions."

The legal principle involved in Bennett v. Stockwell, is almost identical with the question now before this court, except in the Michigan case, the jury made an unauthorized report in which it made allegedly libelous statements concerning the plaintiff. Here we have the charge that the grand jury brought about the arrest and confinement of a witness in violation of the statute, which was clearly beyond its jurisdiction.

Certainly a grand jury or a grand juror cannot be held to answer for any act within the area of the grand jury's jurisdiction. If this question had arisen over some matter pertaining to an indictment or some matter pertaining to an investigation which the grand jury was conducting, or were in the general area of its jurisdiction, there would be no hesitancy on the part of this court to say that the rule of secrecy must prevail.

But, accepting as true for the purposes of this interlocutory opinion the statement made in the Complaint, that is not the situation here. The Complaint charges that the grand jurors and the other defendants brought about the arrest of a witness who was not charged with "treason, felony or breach of the peace". This is a violation of Missouri law and is clearly not within the legal function of a grand jury.

IT IS THEREFORE my conclusion that the grand jurors and the assistant prosecuting attorney are not prohibited from revealing to counsel, embodying in pleadings, testifying concerning, or otherwise using in such manner as may be necessary to a proper defense of this action, occurrences before the grand jury and the actions of the grand jury and the individuals thereof, to such extent as is necessary to meet the charges which have been made against them in the Complaint filed in this case.

To that extent the motions of the respective parties are sustained and the Motions to Dismiss are hereby overruled.