WESTERHOUSE *v.* DEWITT.

1. SLANDER—PLEADING—SUFFICIENCY OF NOTICE—DEFENSE OF PRIVILEGE.

In an action for slander, defendant's notice, added to the plea advising plaintiff that the defendant would insist in his defense that the "alleged slanderous communications * * * were made, if made at all, either in whole or in part, under such circumstances as to make them" absolutely or qualifiedly privileged, *held*, sufficient to permit defendant to show qualified privilege.

2. SAME—TRIAL—INSTRUCTIONS—PRIVILEGE.

Where the alleged slanderous words were spoken at a meeting called by the minister of the church to which defendant belonged, in an effort to reconcile defendant and another member who had practically charged defendant with perjury because he had made said slanderous statements as a witness in a law suit some time previously, the trial judge properly instructed the jury that the occasion was one of qualified privilege, and that, in order for plaintiff to recover, she must show that the statements were untrue and that they were made by defendant through express malice and ill-will toward plaintiff.

3. SAME—PRIVILEGE.

The question of privilege in an action for slander is to be determined by the occasion and not the language used.

4. APPEAL AND ERROR—CHARGE AS WHOLE—REFUSAL OF REQUESTS TO CHARGE.

Where the charge as a whole properly submitted the case to the jury, refusal of requests to charge which might properly have been given, *held*, not reversible error.

5. SAME—DAMAGES NOT MATERIAL WHERE VERDICT AGAINST PLAINTIFF.

Assignments of error on the instructions to the jury on the question of damages are immaterial where the verdict of the jury was against the plaintiff.

6. SLANDER—EVIDENCE—ADMISSIBILITY.

> Objection to testimony as to derogatory statements made by defendant about the family of plaintiff was properly sustained, where there was no suggestion that it would in any way concern the plaintiff.

Error to Ottawa; Cross (Orien S.), J. Submitted June 7, 1921. (Docket No. 8.) Decided July 19, 1921.

Case by Fannie Westerhouse, an infant, by her next friend, against Otto De.Witt for slander. Judgment for defendant. Plaintiff brings error. Affirmed.

*Charles E. Misner*, for appellant.

*Louis H. Osterhous*, for appellee.

SHARPE, J. This action is for damages for slander. The declaration charges that defendant, on November 5, 1918, at the township of Spring Lake, in the county of Ottawa, in the presence of divers persons, said that plaintiff had raised her skirts in an indecent manner in his presence, that the testimony he had given at the trial of one Bert Holstege, to the effect that plaintiff's reputation for morality and chastity was bad, was true, and that he further said that plaintiff went out and stayed all night in an automobile with a perfect stranger. The defendant pleaded the general issue and gave notice that, if such statements were made by him, they were made without malice or ill-will and under such circumstances as rendered them privileged. The case was submitted to the jury, who found for the defendant. Plaintiff reviews the judgment entered by writ of error. The assignments relied on are thus grouped by her counsel:

(1) Permitting the defendant to show qualified privilege under the plea and notice.

(2) Refusing requests to charge.

(3) Errors in the charge as given.

(4) Rejection of evidence.

These will be considered in the order above stated.

1. The notice, added to the plea, advised plaintiff that the defendant would insist in his defense that the—

"alleged slanderous communications  *  *  *  were made, if made at all, either in whole or in part, under such circumstances as to make them"

—absolutely or qualifiedly privileged. Defendant's counsel insists that privilege may be shown under the general issue. Irrespective of this claim, we think the notice was sufficient. Its purpose was to advise plaintiff that such a defense would be made. The time and place of the alleged publication were stated in the declaration. There was no dispute about the occasion on which plaintiff relied.

2. It appeared that plaintiff had prosecuted one Bert Holstege on a charge of bastardy and had also sued him for damages for seduction. The defendant here had been called by Holstege as a witness and had testified that the general reputation of plaintiff for morality and chastity was bad. On one or both of those trials he testified that plaintiff had, when alone with him, stood before him with her clothes raised, and that she had been out all night with a stranger in an automobile. Defendant is a member of the Reformed Church, as is also one Ralph Kuitert. Kuitert had been called as a witness for plaintiff in those cases and had testified that she had a good reputation for morality and chastity. They met some time after the trial and an altercation ensued, in which Kuitert used language towards defendant which caused him to prefer charges against Kuitert to the consistory of the church. These charges, and also others preferred by another witness named Fred Bremer, were apparently

dismissed by the consistory, but afterwards a special meeting was called by the minister, which defendant and Bremer and Kuitert were notified to and did attend. Those present at the meeting were the minister, who was not called as a witness, Elders John Bottema, John Kruizenga and John Bremer, and Kuitert, Henry Swiftney, Fred Bremer and the defendant. The purpose of this meeting and what was said by defendant thereat were thus stated by John Bottema, one of the elders of the church:

"The elders of the church and the minister are to look after the spiritual welfare of the flock and Otto De Witt was a full member, as well as Ralph Kuitert and Fred Bremer, of the church, and because they had been living in enmity on account of this trial coming off and what had been said pro and con, they, as elders and minister, invited them to come to the church basement, where they had the consistory meeting, to see if they could straighten up the difficulty between them. Mr. Bremer and Mr. De Witt were asked to state their complaint against Mr. Kuitert by the minister. After this Mr. Kuitert was called upon to make a reply, in the course of which he said that he didn't believe what he had heard in the court; that Otto De Witt had given his testimony saying that Fannie Westerhouse had stood before him with her skirts up."

That De Witt then said, "You might as well call me a liar," and, on Kuitert repeating that he did not believe what De Witt had sworn to, that De Witt said, "What I said I said under oath and it is the truth and God may strike me dead if it is not so." His testimony is fairly corroborated by all the other witnesses except Kuitert. On direct-examination, he testified that the defendant had then repeated what he had sworn to on the trial, but on cross-examination admitted he was not positive that defendant said anything more than "what he had testified to in court was true."

On the question of privilege, the jury were instructed:

"If it appears from the testimony in the case that what the defendant said at the time and place in question he said at a meeting of the minister and elders of his church, called to consider, investigate and adjust the differences between the defendant and one Kuitert, a member and elder of the same church, and the differences between one Fred Bremer, another member of the church and said Kuitert, the occasion would be one of qualified privilege, and if so, whatever was said by the defendant in the course of such investigation and inquiry, was qualifiedly privileged as a matter of law, and if you so find I charge you that in order for the plaintiff to recover she must show first that the statements made by the defendant were untrue, and second, that they were made by him through express malice and ill-will toward her."

We think this instruction was fully justified by the testimony. The question of privilege is to be determined by the occasion and not the language used. It may well be said to have been the duty of the defendant to attend this meeting in an effort to become reconciled to Mr. Kuitert, an elder of the church to which he belonged. The morality or chastity of the plaintiff was in no way an issue for consideration at the meeting except as it involved the charge of Kuitert that defendant had committed perjury in what he had sworn to on the Holstege trials. That he had so testified was a matter of general information, well known to all those present. As to qualified privilege, it was said in *Bacon* v. *Railroad Co.*, 66 Mich. 166:

"It extends to all communications made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, to a person having a corresponding interest or duty. And the privilege embraces cases where the duty is not a legal one, but where it is of a moral or social character of imperfect obligation."

The rule is also, thus stated in 17 R. C. L. p. 341:

"A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation.   In the absence of malice an utterance may be qualifiedly privileged, even though it is not true, and notwithstanding the fact that it contains a charge of crime."

See, also, *Livingston* v. *Bradford,* 115 Mich. 140; *Zanley* v. *Hyde,* 208 Mich. 96.

The requests preferred by plaintiff on this subject were, we think, properly refused.

Error is assigned on the charge as given and the requests refused on the subject of malice.   After instructing the jury that "The speaking of slanderous words in themselves constitute implied malice," the court further said:

"In this case if you find from the evidence that the defendant did at the time and place alleged charge that the plaintiff was an unchaste, immoral and indecent person in substantially the words set up in the declaration, I charge you as a matter of law that those statements in themselves would raise a presumption of malice.   In other words malice in a legal sense means a wrong act done intentionally without just cause and excuse.   If, therefore, you find from the evidence that the defendant did make the statements against the plaintiff as claimed by the plaintiff, plaintiff is entitled to recover at your hands a verdict for such damages as you may find that she has suffered by reason of the publication of such slander, if any, to injured feelings, to mortification and humiliation in the community where she lives, unless you further find they were privileged and without malice."

He further instructed the jury that while the plaintiff could only recover for the alleged slander on No-

vember 5, 1918, they should consider any statements of similar import made by defendant, either before or after that date, as bearing upon the question whether the words were uttered maliciously. While some of the requests preferred might well have been given, in view of the charge taken as a whole we find no reversible error in their refusal.

3. Error is assigned on the instruction given as to the damages which might be allowed plaintiff. As the verdict was against plaintiff, these assignments need not be considered.

4. Ralph Kuitert, while being examined as a witness for the plaintiff, stated that on other occasions the defendant had stopped him on the road and "talked about the family of Westerhouse and tried to down them." He was then asked: "Did he say anything about Mr. Westerhouse?" and "What did he say about the family of Westerhouse?" It may well be said that the matter inquired about was answered in what the witness had already said. There was no suggestion in the questions, or by counsel to the court, that the answers would in any way concern the plaintiff. We find no error in the rulings sustaining objections to these questions. We feel constrained to agree with the trial judge, who, in denying the motion for a new trial, said:

"The case was fairly submitted to the jury and under the facts the verdict is just and should stand."

The judgment is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.